UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LONDON DE'SHAWN NEAL,

      Plaintiff,

v.            Case No. 24-CV-182

LT. MARCUS KING, *et al.*,

      Defendants.

---

**DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

  Plaintiff London De'Shawn Neal, who is incarcerated at Columbia Correctional Institution and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Neal was allowed to proceed on a claim for deliberate indifference to risk of harm pursuant to the Eighth Amendment and a retaliation claim pursuant to the First Amendment against defendant Lt. Marcus King. Neal was also allowed to proceed on a due process claim under the Fourteenth Amendment against Lt. Anthony Matushak. The defendants filed a motion for partial summary judgment for failure to exhaust administrative remedies, asserting that Neal failed to properly exhaust his due process claim against Matushak. (ECF No. 14.)

  The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 12.) The motion is fully briefed and ready for a decision.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

The Inmate Complaint Review System (ICRS) is the main process a prisoner must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. Before filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code

3

§ DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about and must be limited to one issue at a time. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements, including if the inmate complaint contains more than one issue. Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the Reviewing Authority. Wis. Admin. Code § DOC 310.10(12). The Reviewing Authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the Reviewing Authority's decision, an inmate may appeal the reviewing authority's decision to the Corrections Complaint Examiner. Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e). Appeals must also be "limited to the issue raised in the original complaint." Wis. Admin. Code § DOC 310.09(2)(g). If a prisoner does not receive a decision within 45 days after the date the ICE

acknowledged the inmate complaint, he may appeal to the Corrections Complaint Examiner. Wis. Admin. Code § DOC 310.11(3).

The Corrections Complaint Examiner then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The Corrections Complaint Examiner "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the Corrections Complaint Examiner's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the Corrections Complaint Examiner's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

*Neal's Allegations and Attempts to Exhaust his Administrative Remedies*

On September 6, 2023, while meals were being passed out, non-defendant CO Scott Hansen requested Neal show his hands and turn on his cell light. (ECF No. 1 at 3.) Neal refused. (*Id.*) A short while later, King came to Neal's cell to ask about his interaction with Hansen. (*Id.* at 4.) When Neal complained that he was denied his meal, King explained it was because he would not show his hands. (*Id.*) Neal stated he did not show his hands because he was suicidal. (*Id.*) He then showed King two plastic bags full of approximately 100 pills. (*Id.*)

King walked off but returned to Neal's cell a little while later. (ECF No. 1 at 4.) By that time, Neal had already swallowed approximately 50 pills. (*Id.*) Neal was

5

on the verge of overdosing, so he was taken to the hospital for treatment. (*Id.* at 4-5.)

On September 15, 2023, once Neal returned from the hospital, he filed an inmate complaint against King for failing to prevent him from overdosing. (ECF No. 1 at 5.) Neal states that King then wrote him a conduct report in retaliation for writing the inmate complaint. (*Id.* at 6.) Conduct Report 00342047 charged Neal with disruptive conduct, misuse of medication, and use of intoxicants. (ECF No. 17-1 at 1.) In short, Neal was accused of lying about being suicidal and instead ingested the pills because he was angry at King. (*Id.*) The conduct report was designated as referencing a major offense, and Neal was provided notice of his due process rights. (ECF No. 16, ¶ 3.)

On October 9, 2023, Neal had his due process hearing related to the conduct report. (ECF No. 16, ¶ 4.) Matushak was the hearing officer and found Neal guilty after considering the conduct report, Neal's statement, the psychology report completed for the hearing, and body-worn camera footage. (*Id.*, ¶ 4.) Neal's defense at the hearing was that it was against DOC policy to give a prisoner a conduct report for a suicide attempt. (ECF No. 1 at 7.) Matushak imposed 90 days disciplinary separation and required $10,000 in restitution for medical bills. (*Id.*) Neal states that Matushak ended the hearing early because his staff advocate had a coughing fit, so he found Neal guilty without evidence to support his findings. (*Id.* at 8.)

The defendants state that Neal filed two relevant inmate complaints—GBCI-2023-14065 and GBCI-2023-17225. (ECF No. 17, ¶ 5.) However, GBCI-2023-14065

was the inmate complaint Neal filed on September 19, 2023, and was the reason King issued the conduct report. (ECF No. 17-3.) Because it was filed before the conduct report was written, it is irrelevant to the question of whether Neal exhausted his administrative remedies for his due process claim against Matushak.

As to GBCI-2023-17225, it is undisputed that Neal took the complaint fully through the grievance process. (ECF No. 16, ¶ 7.) The defendants assert that the inmate complaint concerns only King's alleged retaliation and does not provide details of Matushak's alleged due process violations. (*Id.*) Neal states that he "did reference the hearing because he's citing DOC-DAI Policy 303.00.04(111)(c)" and explains that, pursuant to that policy, his conduct report should have been dismissed. (ECF No. 32, ¶ 3.) Neal also refers to his appeal of his conduct report and states that, when the appeal of the conduct report is considered along with his inmate complaint, the institution was put on notice of his due process claim against Matushak. (*Id.*, ¶ 2.)

The one issue that Neal said he was complaining about in GBCI-2023-17225 was that his conduct report should be dismissed pursuant to DOC-DAI Policy 303.00.04(111)(c); he also requested that the restitution order be overturned. (ECF No. 17-4 at 12.) When asked to give details about his complaint, Neal stated that King wrote the conduct report in retaliation for Neal filing GBCI-2023-14065 and that Warden Christopher Stevens erred in not overturning Matushak's decision at the disciplinary hearing because it should have been dismissed pursuant to DOC-DAI Policy 303.00.04(111)(c). (*Id.*) The only reference to the actual due process

7

hearing is that Neal was found guilty at the hearing. (*Id.*) Neal makes no mention of Matushak's actions at the hearing or the evidence he did or did not consider. (*Id.*)

In his appeal of his conduct report Neal states that the conduct report does not support the finding of guilt because it is contrary to DOC-DAI Policy 303.00.04(111)(c). (ECF No. 17-1 at 12.) He also states that King filed the conduct report in retaliation for Neal filing an inmate complaint. (*Id.*) Neal does not mention Matushak or Matushak's actions at the due process hearing. (*Id.*)

*Analysis*

Neal argues that the content of inmate complaint GBCI-2023-17225, when combined with his appeal of his conduct report, demonstrates that he put the institution on notice of his due process claim. The Seventh Circuit Court of Appeals "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

To satisfy the exhaustion requirement, a prisoner must give "a prison 'notice of, and an opportunity to correct, a problem.'" *Schillinger v. Kiley*, 954 F.3d 990, 995-96 (7th Cir. 2020) (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)). A prisoner's inmate complaint "will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" *Id.* (quoting

8

*Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002)). The inmate complaint does not need to state "facts, articulate legal theories, or demand particular relief" and it does not need to specifically name each defendant as long as the grievance "object[s] intelligibly to some asserted shortcoming." *Strong,* 297 F.3d at 650.

Inmate complaint GBCI-2023-17225, even when taken in context of the appeal of Neal's conduct report, did not put the institution on notice of a due process violation at Neal's disciplinary hearing. Neal was allowed to proceed on a due process claim against Matushak because he allegedly found him guilty without evidence to support his decision. (ECF No. 8 at 4-5.) Neal's inmate complaint, however, took issue with the Warden upholding the disposition of the due process hearing because the disposition violates DOC policy. The appeal of the conduct report states something similar. Neither complain that Matushak did not have enough evidence to find Neal guilty or that Matushak's review of the evidence was insufficient; they complain that the Warden erred when considering' Neal's appeal of the conduct report.

Thus, neither the inmate complaint nor the appeal of the conduct report alerted the institution that Matushak was responsible for an alleged due process violation. In fact, they did not alert the institution of any due process violation; they only alerted the institution of a *policy violation*. The violation of a does not amount to a constitutional violation. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).

9

Neal does not demonstrate that he properly exhausted his administrative remedies relating to a due process claim against Matushak. Therefore, partial summary judgment is granted in Matushak's favor.

## CONCLUSION

Neal failed to exhaust his administrative remedies for his due process claim against Matushak. The court grants partial summary judgment in favor of the defendants. The due process claim against Matushak is dismissed without prejudice. *See Chambers v. Sood*, 959 F.3d 979, 984 (7th Cir. 2020). Because that was the only claim against Matushak, he is dismissed as well. The court will issue an amended scheduling order at a later date to move the case forward.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for partial summary judgment (ECF No. 14) is **GRANTED.** The Fourteenth Amendment due process claim is **DISMISSED without prejudice.**

**IT IS FUTHER ORDERED** that Anthony Matushak is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 6th day of February, 2025.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge

10